**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**



| | |
|---|---|
| SUSAN FREEDMAN and ROBERT FREEDMAN, individually and on behalf of all others similarly situated, : : : : | **CIVIL ACTION NO.** _____ |
| Plaintiffs, : : : : | **JURY TRIAL DEMANDED**<br><br>**CLASS ACTION** |
| v. : : | |
| ALCON, INC., THOMAS G. PLASKETT, LODEWIJK J.R. DE VINK, JOAN W. MILLER, DANIEL VASELLA, CARY R. RAYMENT, KEVIN BUEHLER, WERNER J. BAUER, PAUL BULCKE, FRANCIS CASTANER, JAMES SINGH, HERMAN WIRZ, NOVARTIS AG, and NESTLÉ S.A., : : : : : : : : : |  |
| Defendants. : : | |

Plaintiffs Susan Freedman and Robert Freedman, co-trustees of unified credit

trust under will of Ellis Freedman, dated 7/18/83 ("Plaintiffs"), through their counsel,

allege upon information and belief, except for allegations pertaining to Plaintiffs, which

are based upon personal knowledge, as follows:

<u>**NATURE AND SUMMARY OF THE ACTION**</u>

1.      This is a shareholder class action complaint ("Complaint") brought by

Plaintiffs on behalf of the minority shareholders of Alcon, Inc. ("Alcon" or the

"Company") against the Company, its Board of Directors (the "Board"), Novartis AG

("Novartis"), and Nestlé S.A. ("Nestlé") in connection with the proposed offer (the

"Proposed Transaction") made by Nestlé and Novartis, Alcon's controlling shareholders,

to acquire the publicly-traded shares of Alcon they do not already own via an unfair process and at an unfair price.

2.     Based upon the closing price of Novartis' stock on the last day of trading before the announcement, this Proposed Transaction values Alcon shares at roughly $152 per share, which is well below the price at which Alcon shares have traded consistently since late November 2009. (On the last day of trading before the announcement, Alcon's stock closed at $164.35.) Novartis currently owns 25 percent of the outstanding shares of Alcon, which it began acquiring in April 2008 pursuant to an Agreement with Nestlé, as discussed in detail below. On January 4, 2010, Novartis announced it is executing an option to buy Nestlé's remaining 52 percent Alcon stake at the agreed upon weighted average price of $180.00 per share. This will cause Novartis to become a majority and controlling shareholder of Alcon, with approximately 77 percent ownership of the Company.

3.     The consideration that Novartis has stated it will offer to the minority holders of the Alcon common stock is unfair and inadequate because, among other things, the value of Alcon common stock is materially higher than the amount offered. First, the price when offered, based on the then-current price of Novartis stock, was only $152 per Alcon share, compared to the $180 per share that Novartis was paying Nestlé for its shares, a $28 per share reduction, and the $152 per share was substantially less per share than the then-current market price of Alcon shares. And, today, the value of the proposed buy-out is even less, and could continue to decline depending on Novartis' stock price. Moreover, the process by which Novartis is acquiring the shares is coercive

2

and is unfair to minority holders.  The flawed process is designed to ensure the sale of Alcon to Novartis on terms detrimental to Plaintiffs and the Class.

4.      As set forth in detail below, Plaintiffs seek to enjoin, preliminarily and permanently, the Proposed Transaction, or in the event the Proposed Transaction is consummated, recover damages as a result of the violations of law alleged herein.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332, because complete diversity exists between Plaintiffs and each of the Defendants and the amount in controversy exceeds $75,000, exclusive of interests and costs.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## PARTIES

7.      Plaintiffs Susan Freedman and Robert Freedman, co-trustees of unified credit trust under will of Ellis Freedman, dated 7/18/83, are and were at all times relevant hereto shareholders of Alcon.  Plaintiffs are citizens of Pennsylvania.

8.      Defendant Alcon, a subsidiary of Nestlé, is a Swiss corporation with its United States headquarters at 6201 South Freeway, Fort Worth, Texas 76134.  Alcon engages in the development, manufacture, and marketing of pharmaceuticals, surgical equipment and devices, and consumer eye care products to treat primarily diseases and disorders of the eye in the United States and worldwide.  The Company sells its pharmaceutical products to physicians, distributors, wholesalers, hospitals, government agencies and larger retailers; its surgical products directly to hospitals and ambulatory surgical centers and through distributors; and its consumer eye care products directly to retailers and optical chains, as well as to distributors for resale directly to smaller retailers

3

and eye care professionals. The Company's common stock is listed only on the New York Stock Exchange (NYSE) under the symbol "ACL." Alcon is a citizen of Switzerland and Texas.

9.      Defendant Thomas G. Plaskett has served as a member of the Alcon Board since 2003. Additionally, he serves as a member of the Audit Committee, the Nominating/Corporate Governance Committee, the Compensation Committee and the Independent Director Committee. Plaskett is a citizen of Texas.

10.      Defendant Joan W. Miller has served as a member of the Alcon Board since 2009. She also serves as a member of the Audit Committee, the Nominating/Corporate Governance Committee and the Independent Director Committee. Miller is a citizen of Massachusetts.

11.      Defendant Lodewijk J.R. de Vink has served as a member of the Alcon Board since 2002. He also serves a member of the Audit Committee, the Nominating/Corporate Governance Committee, the Compensation Committee and the Independent Director Committee. De Vink has substantial experience dealing with valuing healthcare companies as he runs health-care investments for Blackstone Group LP. De Vink is a citizen of New York.

12.      Defendant Daniel Vasella has served as a member of the Board since July 2008 following the closing of the sale of the 24.85 percent minority interest of Alcon by Nestlé to Novartis. Vasella is the Chief Executive Officer of Novartis and is an executive member of the board of directors of Novartis. Vasella purportedly engineered the Proposed Transaction on behalf of Novartis. Vasella is a citizen of Switzerland.

13.     Defendant Rayment retired as the Chairman, President and Chief Executive Officer of Alcon in March 2009, after working for the Company for 20 years. Since then, he has served as the non-executive Chairman of Alcon's Board. Rayment is a citizen of Texas.

14.     Defendant Kevin Buehler has served as the President and Chief Executive Officer of Alcon since April 2009 and as a member of the Board. Buehler has served in various capacities at Alcon since beginning with the Company in 1984. He is a citizen of Texas.

15.     Defendant Werner J. Bauer has served as a member of the Board since 2002. He is one of Nestlé's five nominees to Alcon's Board. Bauer has been employed by Nestlé since 1990 and since 2007, he has served as Nestlé's Chief Technology Officer, Head of Innovation, Technology R&D. He is Chairman of the Supervisory Board of Nestlé Deutschland AG. He is a citizen of Switzerland.

16.     Defendant Paul Bulcke has served as a member of the Board since 2009. He is one of Nestlé's five nominees to Alcon's Board. Bulcke has served as a member of Nestlé's Board of Directors and as Nestlé's Chief Executive Officer since 2008. He has been employed in various capacities at the Nestle group since 1979. He is a citizen of Belgium.

17.     Defendant Francisco Castaner has served as a member of the Board since July 2001 and is currently the Vice Chairman of Board. He is one of Nestlé's five nominees to Alcon's Board. Nestlé has employed Castaner since 1964. He is a citizen of Spain.

18.     Defendant James Singh has served as a member of the Board since Novartis first acquired Nestlé's Alcon shares.  He is one of Nestlé's five nominees to Alcon's Board.  Since 2008, Singh has served as Nestlé's Executive Vice President and Chief Financial Officer.  Singh began his career with Nestlé in 1977.  He is a Canadian citizen.

19.     Defendant Hermann Wirz has served as a member of the Board since 2009.  He is one of Nestlé's five nominees to Alcon's Board.  Wirz began his career with Nestlé in 1972 and currently serves as Nestlé's Chief Accounting Officer.  He is a citizen of Switzerland.

20.     The defendants listed in ¶¶ 8 – 20 are collectively referred to herein as the "Director Defendants."  The defendants listed in ¶¶ 16-20 are collectively referred to as the "Nestlé Directors of Alcon."

21.     Defendants de Vink, Miller and Plaskett are the sole members of the Independent Director Committee.

22.     Defendant Nestlé is a leading global nutrition, health and wellness company with headquarters in Vevey, Switzerland.  It is listed on the SWX Swiss Exchange and has a market capitalization of approximately 87 billion Swiss francs. Nestlé employs over 280,000 people worldwide and has factories or operations in almost every country in the world.  Nestlé maintains a substantial presence in the United States and in this District and earns substantial revenues from its business transactions here. Nestle is a citizen of Switzerland.

23.     Defendant Novartis is a multi-national pharmaceutical company that engages in the research, development, manufacture and marketing of healthcare products

worldwide.  Novartis is headquartered in Basel, Switzerland and its stock is traded on the New York Stock Exchange under the symbol "NVS."  Novartis is a citizen of Switzerland.

## CLASS ACTION ALLEGATIONS

24.    Plaintiffs bring this action on their own behalf and as a class action on behalf of all minority holders of Alcon stock who are being and will be harmed by Defendants' actions described herein (the "Class").  Excluded from the Class are Defendants and any person, firm, trust, corporation or other entity related to or affiliated with any Defendants, including but not limited to officers and directors of Alcon.

25.    This action is properly maintainable as a class action.

26.    The Class is so numerous that joinder of all members is impracticable. According to the Company, as of December 31, 2008, there were over 298 million common shares of Alcon outstanding, and approximately 69 million shares in the public float.

27.    There are questions of law and fact which are common to the Class and that predominate over questions affecting any individual Class member.  The common questions include, among other things, the following:

      a.    Whether the Proposed Transaction is unfair to the Class;

      b.    Whether the Proposed Transaction inadequately values Alcon;

      c.    Whether Plaintiffs and the Class will be irreparably harmed if the Proposed Transaction is consummated;

      d.    Whether the Director Defendants have breached their fiduciary duties of loyalty, fair dealing, good faith, independence, candor and due care to Plaintiffs and other minority stockholders of Alcon in connection with the Proposed Transaction;

  e. Whether Novartis and Nestlé, as the controlling shareholders of Alcon, have individually or collectively breached their fiduciary duties of loyalty, fair dealing, good faith and due care with respect to Plaintiffs and the Class as result of the conduct alleged herein;

  f. Whether Novartis must demonstrate the entire fairness of the Proposed Transaction and, if so, whether it has or can do so; and

  g. Whether Alcon, Novartis and Nestlé are aiding and abetting the breaches of fiduciary duties by the Director Defendants.

  28. Plaintiffs are committed to prosecuting this action and have retained competent counsel experienced in litigation of this nature. Plaintiffs' claims are typical of the claims of the other members of the Class and Plaintiffs have the same interests as the other members of the Class and do not have any interests adverse to the Class. Accordingly, Plaintiffs will fairly and adequately represent the Class.

  29. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class and establish incompatible standards of conduct for the parties opposing the Class.

  30. Defendants have acted and are about to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

## FACTUAL BACKGROUND

**A.** **Background**

  31. Founded in 1945 by two Fort Worth pharmacists, Alcon is majority owned by Nestlé and is currently incorporated in Hünenberg, Switzerland with U.S. operations based in Fort Worth, Texas. Alcon's core business is centered on three key divisions – Surgical, Pharmaceutical and Consumer Vision Care. As of 2008, the Company's sales

reached $6.3 billion.  The Company has over 15,000 employees in offices located in 75 countries worldwide and develops, manufactures, and distributes hundreds of eye care products in more than 180 countries.

32.    Nestlé acquired Alcon in 1978 and retained 100 percent ownership until March 2002, when the company conducted an initial public offering ("IPO") of about 25 percent of Alcon's shares with Nestlé retaining ownership of the balance.  In March 2002, Nestlé priced these shares at $33.00 per share.  Thereafter, the Company's common shares began trading on the NYSE under the ticker symbol "ACL."  Today, Nestlé still owns approximately 52 percent of the Company.

33.    In April 2008, Nestlé and Novartis entered into an agreement (the "Agreement") for Novartis to buy approximately 74 million shares of Alcon stock owned by Nestlé at a price of $143.18 per share or approximately $11 billion in cash.  This was completed in July 7, 2008, and, as a result, Novartis now owns a minority interest or approximately 24.85% of Alcon's issued and outstanding shares.  Nestlé remains Alcon's largest shareholder with 52 percent of Alcon's issued capital.

34.    Additionally, Novartis and Nestlé announced a second phase of the Agreement (the "Second Stage Acquisition") that could allow Novartis to purchase the remaining Nestlé shares and become the majority owner of Alcon, with a stake of approximately 77 percent.  Pursuant to the Agreement, from January 2010 until July 2011, Novartis had a call option to acquire Nestlé's remaining majority holding in Alcon (the "Option Right").  The Option Right was set at a fixed price of $181 per share.  There were no requirements in the Agreement for Novartis to acquire the publicly traded Alcon shares.

35.     In addition, pursuant to the Agreement "[n]either Novartis nor Nestlé are permitted to buy or sell any [Alcon] [s]hares under the terms of the Purchase and Option Agreement until completion of the Second Stage Acquisition."

36.     Following Novartis' initial purchase from Nestlé of an approximately 25 percent stake in Alcon in July 2008, in December 2008, the Alcon Board established a standing committee of independent directors whose stated purpose is to protect the minority shareholders in connection with a number of transactions, including related party transactions between Alcon and its major shareholders. The current members of the special committee are Defendants Palskett, de Vink and Miller.

37.     As a result, certain protections for the benefit of Alcon's minority shareholders were established in Alcon's governing documents. For example, Article V, Section 5 of Alcon's Organizational Regulations requires approval by a committee of independent directors (as defined by the NYSE rules) of certain transactions, including the Proposed Transaction.

**B.      The Proposed Transaction is Announced**

38.     On January 4, 2010, Novartis announced that it is exercising the Option Right under the Agreement, to purchase approximately 52 percent of Alcon's outstanding shares owned by Nestlé at a weighted average price of $180 per share.[1] Combined with the 25 percent of Alcon's outstanding shares already owned by Novartis, if Novartis is permitted to exercise the Option Right it will cause Novartis to become a majority and controlling shareholder of Alcon, owning approximately 77 percent of the Company.

---

[1] Under terms of April 2008 agreement with Nestlé, the call option exercise price is $181 per share for approximately 152 million shares and $143.18 for approximately 4 million shares, resulting in an average price of $180 per share for the approximately 156 million shares comprising the 52% Alcon stake.

Ownership of more than two-thirds of Alcon's stock constitutes a critical threshold for the acquisition of the remaining stock, as it requires approval by two-thirds of the shareholders and a majority of the board of directors.   In addition, upon acquiring ownership of the majority of the stock, Novartis would have the power to elect new directors to replace the Novartis-designated directors who would resign and could also replace the members of the Independent Committee whose approval is required for the acquisition of the remaining public shares.

39.     On the same day that Nestlé and Novartis announced the Option Right exercise, Novartis announced that it submitted the Proposed Transaction to Alcon's Board whereby Alcon would merger with and into Novartis.  This is a clear attempt by Novartis to use its status as controlling shareholder of Alcon to acquire the remaining Alcon stock that Novartis does not already own at an unfair price and at a price that is much less than the price Novartis is paying Nestlé for its Alcon shares.

40.     Pursuant to the Proposed Transaction, Alcon's minority shareholders will receive 2.8 shares of Novartis stock for each share of Alcon owned.  Based on Novartis' December 31, 2009 closing price, this would translate to only $152 per share, substantially less than Nestlé is receiving from Novartis for its Alcon shares.

41.     According to a January 7, 2010 *Business Week* article titled "What Novartis Sees In Eye Care," the Proposed Transaction will aid Novartis' quest to transform the company into a "diversified global health-care player."  Together, the businesses of Alcon and Novartis cover about 70 percent of the eye care products and services used by people with vision impairment.

42.     The article also notes that the "deal should help Novartis make up for sales that will be lost to generics" and Novartis will benefit because Alcon is less vulnerable to price regulation than Novartis' prescription drug business. The article quotes Luis Correia, an analyst at Clariden Leu stating that "'[t]he Alcon deal is an insurance policy...that sales and profits remain at [high] levels.'"

43.     Despite protections in place for Alcon's minority shareholders, Novartis is attempting to circumvent these safeguards by claiming that Alcon's minority shareholders are neither accorded minority protections under the Swiss Code of Obligations nor the NYSE rules.

44.     On a January 4, 2010 investor conference call, Novartis announced that if it were unable to obtain the required approval of Alcon's Board and the Independent Director Committee, it would simply wait until it owned 77 percent of Alcon to then unilaterally impose the terms of the Proposed Transaction on Alcon's minority shareholders. Such a unilateral action clearly is inconsistent with the minority protection principles upon which Alcon established itself and its minority shareholders rely. It would also constitute a breach of the duty of the Nestlé Directors of Alcon to support or facilitate this transaction, either with their votes or by agreeing to resign and permit Novartis to replace them with new directors who would do Novartis' bidding in derogation of their duties to the minority shareholders.

45.     Novartis has stated that "[u]nder Swiss law, [it] would have the right to vote its [s]hares in favor of the proposed merger" and "[i]f the proposed merger is completed, the [s]hares would be eligible for delisting from the NYSE and become eligible for termination of registration pursuant to Section 12 of the Securities Exchange

Act of 1934, as amended." In response to comments made by Novartis on January 4, 2010, the Independent Director Committee has stated that it believes Alcon has established certain protections to benefit Alcon's minority shareholders against a coercive takeover bid and that it is supposedly disappointed by Novartis' attempt to circumvent such protections and best corporate governance practices. Despite these reassurances, the Proposed Transaction is highly coercive because minority shareholders have no protections if the Proposed Transaction is consummated because there will be no market for the Alcon shares.

46.     In 1992, Swiss lawmakers reformed "Swiss Company Law" and enacted the Swiss Code of Obligations 1992, which codified best corporate governance practices. Specifically, Article 17 of the Swiss Code of Obligations provides that:

> 1) The members of the board of directors as well as third parties engaged with the management shall carry out their duties with due care and must duly safeguard the interests of the Company.
>
> (2) Circumstances being equal, they shall give equal treatment to shareholders.

In addition, Article 717 of the Swiss Company Law reaffirms the directors' duty of loyalty. Defendants have explicitly disregarded these provisions and therefore have violated their fiduciary duties to Plaintiffs and the Class.

47.     Moreover, neither Alcon nor Novartis has stated that only the Independent Director Committee would vote on the Proposed Transaction. Rather, the Schedule 13D filed by Novartis on January 4, 2010 with the Securities and Exchange Commission merely states that the Proposed Transaction "would require approval by the Boards of Directors of Novartis and Alcon." To protect Alcon's minority shareholders, Novartis should require that only independent board members vote.

C.    **Defendants Fail to Maximize Shareholder Value**

48.    The Proposed Transaction is for inadequate consideration and undervalues Alcon. Consistently since early December 2009, the Company's shares were trading over $152, which is a higher share price than the offer.

49.    If the Proposed Transaction is consummated, Novartis would also achieve significant synergies, the value of which is not fully reflected in the merger price. For example, according to a Novartis press release on January 4, 2010, "[w]ith a 77% Alcon majority stake, Novartis believes approximately USD 200 million of annual pre-tax cost synergies could be generated within three years after closing through shared service agreements, collaborations, joint ventures and other business arrangements." Thus, as a result of Defendants' conduct, the Company's minority shareholders have been, and will continue to be, denied a fair process and arm's-length negotiation.

50.    The Proposed Transaction is contingent upon, *inter alia*, approval by Alcon's Board and two-thirds of Alcon's shareholders. These provisions do not adequately protect Alcon's minority shareholders because Novartis' Option Right exercise under the Agreement allows Novartis to appoint and control a majority of the members of Alcon's Board. Additionally, Novartis is entitled to vote its shares in favor of the Proposed Transaction and has already publicly announced its intention to do so. As a result, Novartis can approve any transaction submitted for approval by Alcon's shareholders regardless of the interests or votes of the Company's minority shareholders. Even if the vote on the Proposed Transaction occurs before Novartis officially acquires Nestlé's stake, the Agreement allows Novartis to control the voting of Nestlé's Alcon shares with respect to the Proposed Transaction.

14

51.     Accordingly, by controlling Alcon's Board together with its majority stake in the Company, Novartis will be able to consummate the Proposed Transaction despite the irreparable harm Alcon's minority shareholders face.

52.     Defendants are obligated to explore transactions to maximize minority shareholder value and incorporate all aspects of Alcon's substantial value once merged with Novartis in order to fulfill their fiduciary duties.  The consideration offered does not reflect the true value of the Company, which was known only to Defendants at the time the Proposed Transaction was negotiated and announced.

53.     As a result of the actions of Defendants, Plaintiffs and the Class will suffer irreparable injury if the Proposed Transaction is completed in that Plaintiffs and other members of the Class will be squeezed out by majority shareholder Novartis and accordingly, will not receive fair value for their interest in Alcon's assets and businesses and will be prevented from benefiting from a value-maximizing transaction.

54.     Unless enjoined by this Court, Alcon and Novartis may consummate the Proposed Transaction and thereby breach the fiduciary duties they owe to Plaintiffs and the Class, since the Proposed Transaction would exclude the Class from its fair share of Alcon's valuable assets and businesses to the irreparable harm of the Class.

55.     Plaintiffs and the other members of the Class have no adequate remedy at law.

## ADDITIONAL BASES FOR JURISDICTION

56.     Alcon, Novartis and Nestlé have each transacted business in the United States and in this State and District, including in connection with the Proposed Transaction.  In addition, the Independent Director Committee of Alcon, which is

comprised of Defendants Plaskett, de Vink and Miller, has met in New York City with their counsel and investment advisers in connection with this transaction.

57.     Alcon's stock is listed exclusively on the New York Stock Exchange, and based upon this fact the minority shareholders whose interests are at stake in this transaction may be dependent upon the protections of American courts.

58.     In connection with the Proposed Transaction, each of these defendants has engaged the services of counsel, brokers or investment advisers whose operations are headquartered in or affiliated with activities in New York City.  In the case of Novartis, it has engaged Wachtell, Lipton, Rosen & Katz, which is headquartered in New York City, and Allen & Overy, whose website states that its "New York office is the principal hub of Allen & Overy's Global U.S. Practice."  Nestlé has engaged Cravath, Swaine & Moore, also headquartered in New York City, for this transaction, and the Independent Director Committee of Alcon engaged Sullivan & Cromwell, another firm headquartered in New York City.

59.     In addition, Novartis' own website identifies 19 cities, including New York City, located in nine states plus the District of Columbia where it maintains some kind of operations.

### FIRST CAUSE OF ACTION

**Claim for Breach of Fiduciary Duties**
**Against the Director Defendants, Nestlé and Novartis**

60.     The averments of paragraphs 1 through 59 above are incorporated as if fully set forth herein.

61.     The Director Defendants and Nestlé have violated their fiduciary duties of care, loyalty, candor, good faith, fair dealings and independence owed to the Alcon's minority shareholders.

62.     By the acts, transactions and courses of conduct alleged herein, the Director Defendants, Nestlé and Novartis, individually and acting as part of a common plan, have violated their fiduciary duties owed to the minority shareholders of Alcon by, among other things, not taking adequate measures to ensure that the interests of Alcon's minority shareholders are properly protected from overreaching by the majority shareholder.

63.     As set forth herein, the Director Defendants, Nestlé and Novartis failed to exercise the care required and breached their duties of loyalty, good faith, candor, fair dealing, and independence owed to the minority shareholders of Alcon, because, *inter alia*, they are not independent and are acting out of loyalty to Novartis and Nestlé, not Alcon and its minority shareholders and they failed to properly maximize the value of Alcon shares.

64.     Because the Director Defendants, Nestlé and Novartis dominate and control the business and corporate affairs of Alcon, and are in the possession of private corporate information concerning Alcon's business, assets, and future prospects, there exists and imbalance and disparity of knowledge and economic power between them and Alcon's minority shareholders.

65.     By reason of the foregoing acts, practices and course of conduct, the Director Defendants, Nestlé and Novartis have failed to exercise ordinary care and

diligence in the exercise of their fiduciary duties toward Plaintiffs and other Class members.

66.     The Director Defendants, Nestlé and Novartis are engaging in self-dealing, are not acting in good faith toward Plaintiffs and the Class, and have breached, and are breaching, their fiduciary duties to the Class.

67.     As a result of Defendants' actions, Plaintiffs and the Class have been, and will be, harmed.

68.     Plaintiffs and members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiffs and the Class be fully protected from immediate and irreparable injury, which Defendants' actions threaten to inflict.

## SECOND CAUSE OF ACTION

### Against All Defendants for
### Aiding and Abetting Breaches of Fiduciary Duties

69.     The averments of paragraphs 1 through 68 above are incorporated as if fully set forth herein.

70.     By the acts, transactions and courses of conduct alleged herein, the Defendants, individually and as part of a common plan and scheme or in breach of their fiduciary duties to Plaintiffs and the Class, are attempting unfairly to deprive Plaintiffs and the Class of the true value of their Alcon investment.

71.     Each of the Defendants was aware of the breaches of fiduciary duty being committed by the other Defendants and rendered substantial assistance and encouragement to those defendants. As a result of such breaches, Novartis is attempting,

among other things, to pay Alcon's minority shareholders less than it has agreed to pay Nestlé for its Alcon shares, and has failed to maximize value for the minority shares of Alcon it is acquiring.

72.    By reason of the foregoing acts, practices, and courses of conduct, each of the Defendants has aided and abetted the breaches of fiduciary duties committed by the Director Defendants and Novartis.

73.    As a result of Defendants' actions, Plaintiffs and the other members of the Class have been damaged.

74.    Unless enjoined by the Court, the Defendants will continue to breach their fiduciary duties and to harm Plaintiffs and the Class.

75.    Plaintiffs and the Class have no adequate remedy at law.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and other public shareholders of the Alcon, demand judgment as follows:

A.    Declaring this action properly maintainable as a class action;

B.    Awarding, against all Defendants and in favor of the Class, the value lost as a result of Defendants' breaches of fiduciary duties;

C.    Declaring the Proposed Transaction violates the Swiss Code of Obligations and Alcon's organizational documents;

D.    Against all Defendants and in favor of Plaintiffs and the Class for the amount of damages sustained as a result of Defendants' violations of the Swiss Code of Obligations and Alcon's organizational documents;

E.     Preliminarily and permanently enjoining the Proposed Transaction until the Independent Directors vote to approve it and the consideration to be paid to minority shareholders of Alcon is fair, reasonable and just in the circumstances;

F.     To the extent, if any, that the Proposed Transaction complained of is consummated prior to the entry of final judgment, rescinding the transaction and/or awarding damages to the Class;

G.     Awarding restitution to the Class from Defendants;

H.     Awarding Plaintiffs the costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, costs and expenses; and

I.     Awarding such additional or different relief as the interests of justice or equity may require.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

BARRACK, RODOS & BACINE

A. Arnold Gershon (AG3809)
William J. Ban (WB0382)
Gloria Kui Melwani (GM5661)
1350 Broadway, Suite 1001
New York, NY 10018
(212) 688-0783

OF COUNSEL:

BARRACK, RODOS & BACINE
Daniel E. Bacine
Mark R. Rosen
Julie B. Palley
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
(215) 963-0600